*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
GASTON, STEWART, and HOUTZ
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Ignacio DELGADO**
Hospital Corpsman Third Class (E-4), U.S. Navy
*Appellant*

**No. 201900065**

_____

Decided: 8 December 2021

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge:
Roger E. Mattioli

Sentence adjudged 6 January 2020 by a general court-martial convened at Washington Navy Yard, District of Columbia, consisting of a military judge sitting alone. Sentence approved by the Convening Authority: reduction to E-1, forfeiture of all pay and allowances, confinement for seven years, and a dishonorable discharge.[1]

For Appellant:
*Lieutenant Michael W. Wester, JAGC, USN*

---

[1] The convening authority suspended confinement in excess of four years pursuant to a pretrial agreement.

For Appellee:
*Lieutenant Gregory A. Rustico, JAGC, USN*
*Major Clayton L. Wiggins, USMC*

---

**This opinion does not serve as binding precedent, but
may be cited as persuasive authority under
NMCCA Rule of Appellate Procedure 30.2.**

---

PER CURIAM:

Appellant was convicted, pursuant to his pleas, of sexual abuse of a child in violation of Article 120b, Uniform Code of Military Justice [UCMJ].[2] He asserts two assignments of error: (1) his sentence was rendered inappropriately severe when the Government required him to spend 30 days in segregated confinement; and (2) his due process right to speedy appellate review was violated when the Government took 46 days to docket his case with this Court after the convening authority's action.

We find no prejudicial error and affirm.

## I. BACKGROUND

In January 2018, Appellant confessed to his psychotherapist that he had sexually abused his daughter. Appellant said he caused his daughter, who was between 18 and 21 months of age at the time of the abuse, to touch his penis with her hands on at least three occasions in order to sexually arouse himself. Appellant's psychotherapist, as required by state law, informed Maryland Child Protective Services of the abuse. The case was investigated, and Appellant was charged with sexual abuse of a child.

At trial, Appellant moved to suppress his confession. The military judge ruled the confession inadmissible under Military Rule of Evidence [Mil. R. Evid.] 304(c). The Government appealed the military judge's ruling to this Court under Article 62, UCMJ. We vacated the military judge's ruling, which

---

[2] 10 U.S.C. § 920b (2012).

had applied an incorrect legal standard.[3] Upon remand, the military judge ruled that Appellant's confession was admissible. Appellant subsequently pleaded guilty to sexually abusing his daughter.

## A. Appellant's Confinement

On 6 January 2020, after his guilty plea and sentencing, Appellant was initially confined at Naval Consolidated Brig Charleston, Detachment Chesapeake, a Level 1 military confinement facility [MCF]. Upon arriving at the MCF, Appellant was processed to determine his classification level. Based on the administrative and management factors used by the MCF staff, Appellant was initially screened as a medium security prisoner. However, the Command Duty Officer [CDO] performing the screening decided to override this initial classification due to the length of Appellant's sentence and classified him as a maximum security prisoner. As a result, Appellant was placed in segregated confinement away from general-population prisoners.

Within the segregated confinement section of the MCF, there were multiple cells, at least two of which were occupied for most of Appellant's time there. Thus, he was able to converse with other prisoners in segregated confinement while each of them remained in their respective cells. For only a few of Appellant's 30 days in segregated confinement was he the only person in that section. He does not allege that he was denied life's necessities during this period. In addition, he was permitted to have visitors, watch television, and avail himself of telephone privileges.

On 14 January 2020, Appellant petitioned the Officer-in-Charge [OIC] of the MCF to be removed from segregated confinement, which he described as "solitary confinement." His request was denied. He then filed an Article 138, UCMJ, complaint against the OIC of the MCF, which was also denied. In denying Appellant's complaint, Commander, Navy Personnel Command, explained that a complaint against the general policies of the Navy is not a proper complaint under Article 138 and that prisoner classification levels are based on a totality of information and regularly reviewed at multiple levels. Appellant remained in segregated confinement for 30 days until his transfer to Naval Consolidated Brig Miramar, California, on 7 February 2020.

---

[3] *United States v. Delgado*, No. 2019000065, 2019 CCA LEXIS 314 (N-M Ct. Crim. App. July 31, 2019) (unpublished) [*Delgado I*].

**B. Delay in Docketing Appellant's Case with This Court**

The convening authority acted on Appellant's sentence on 4 May 2020, 119 days after Appellant's trial. On 7 May 2020, the record of trial was delivered to the Navy-Marine Corps Appellate Review Activity, Administrative Support Division (Code 40). On 19 June 2020, 46 days after the convening authority took action, the case was docketed with this Court.

## II. DISCUSSION

**A. Appellant's Sentence Is Not Inappropriately Severe**

Appellant alleges that his sentence was rendered inappropriately severe when he had to spend 30 days in segregated confinement at the initial MCF while awaiting transfer to another facility. He does not claim his placement in segregated confinement violated the Eighth Amendment or Article 55, UCMJ. Rather, he argues the Government lacked a legitimate reason to place him in segregated confinement and asks us to exercise our authority under Article 66(c), UCMJ, to approve a reduced sentence based upon his post-trial confinement conditions.[4]

*1. Standard of Review and the Law*

This Court "may affirm only such findings of guilty and the sentence or such part or amount of the sentence, as it finds correct in law and fact and determines, on the basis of the entire record, should be approved."[5] Article 66(d)'s "sentence appropriateness provision is a sweeping [c]ongressional mandate to ensure a fair and just punishment for every accused."[6] This analysis requires "'individualized consideration' of the particular accused 'on the basis of the nature and seriousness of the offense and the character of the offender.'"[7] "Sentence appropriateness involves the judicial function of assur-

---

[4] *See United States v. Gay*, 75 M.J. 264, 269 (C.A.A.F. 2016) (holding a court of criminal appeals "did not abuse its discretion when it exercised its Article 66(c) sentence reassessment authority for post-trial confinement conditions despite its conclusion that the conditions did not rise to a violation of the Eighth Amendment or Article 55").

[5] Article 66(d), UCMJ.

[6] *United States v. Baier*, 60 M.J. 382, 384 (C.A.A.F. 2005) (internal quotations omitted).

[7] *United States v. Snelling*, 14 M.J. 267, 268 (C.M.A. 1982) (quoting *United States v. Mamaluy*, 27 C.M.R. 176, 180–81 (C.M.A. 1959)).

ing that justice is done and that the accused gets the punishment he deserves."[8] Confinement conditions may very well alter an accused's punishment into something *worse* than he deserves.[9]

While we "review sentence appropriateness de novo,"[10] we do not have "the ability to grant mercy."[11] Nor do we have the "unlimited authority . . . to grant sentence appropriateness relief for any conditions of post-trial confinement of which [we] disapprove."[12]

### 2. Administrative Remedies

A prisoner "must seek administrative relief prior to invoking judicial intervention to redress concerns regarding post-trial confinement conditions."[13] A prisoner, absent "unusual or egregious circumstance," must demonstrate he has (1) "exhausted the prisoner-grievance system" and (2) "petitioned for relief under Article 138, UCMJ."[14] In this case, the Government concedes that Appellant exhausted his administrative remedies before seeking judicial intervention.

### 3. Analysis

Appellant acknowledges that the *Department of the Navy Corrections Manual*[15] includes criteria for overriding the initial classification score, but argues that the Government's reasons for placing Appellant in segregated confinement failed to satisfy its own regulation. We disagree.

---

[8] *United States v. Healy*, 26 M.J. 394, 395 (C.M.A. 1988).

[9] *United States v. White*, 54 M.J. 469, 475 (Sullivan, J., concurring) ("I am heartened that this Court has finally and squarely held in this case and also in *United States v. Erby*, 54 M.J. 476 (C.A.A.F. 2001), that the lower courts have the duty and the jurisdiction to review whether the sentence imposed by a court-martial is being unlawfully increased by prison officials.").

[10] *United States v. Lane*, 64 M.J. 1, 2 (C.A.A.F. 2006).

[11] *United States v. Nerad*, 69 M.J. 138, 146 (C.A.A.F. 2010) (citing *United States v. Boone*, 49 M.J. 187, 192 (C.A.A.F. 1998)) (internal quotations omitted).

[12] *Gay*, 75 M.J. at 269.

[13] *United States v. Wise*, 64 M.J. 468, 471 (C.A.A.F. 2007) (citing *White*, 54 M.J at 472).

[14] *White*, 54 M.J. at 472 (citation and internal quotation marks omitted).

[15] Sec'y of the Navy Man. 1640.1, *Department of the Navy Corrections Manual*, (May 15, 2019) [SECNAVMAN 1640.1].

The *Department of the Navy Corrections Manual* explicitly identifies criteria for overriding the initial classification score.[16] The manual also requires that when a prisoner is placed in segregated confinement he must have his case reviewed within 72 hours, and at least every seven days for the first 60 days spent in segregation.[17] The record in this case demonstrates that the MCF correctly followed the appropriate instructions when initially and temporarily placing Appellant in segregated confinement, and in keeping him in such confinement upon repeated reviews of his case.[18] Appellant may disagree with the MCF's actions, but he has not demonstrated that the MCF staff failed to act in accordance with the applicable instruction or that they acted with any ill motive to increase his sentence beyond the punishment he deserves. Like our superior court, "[w]e are reluctant to second-guess the security determinations of confinement officials."[19]

We conclude that Appellant's sentence was not rendered inappropriately severe when he spent 30 days in segregated confinement, and he is not entitled to relief.

**B. Appellant Was Not Denied Speedy Appellate Review**

Convicted servicemembers have a constitutional "due process right to timely review and appeal of courts-martial convictions."[20] As it is a matter of

---

[16] SECNAVMAN 1640.1, para. 4202.5 (discussing that factors to consider in assessing whether to override the objective-based classification system include length of sentence, whether the prisoner is awaiting transfer, and whether the sentence length exceeds the designated length of confinement authorized at the MCF).

[17] SECNAVMAN 1640.1, para. 4205.4.

[18] Appellee's Motion to Attach, dtd 25 May 2021, Appendix A-C, "Status Review I, Jan 7 2020; Status Review II, Jan. 13, 2020; Status Review III, Jan. 22, 2020; Status Review IV, Jan. 27, 2020."

[19] *United States v. King*, 61 M.J. 225, 228 (C.A.A.F. 2005) (finding that King's classification as a maximum security prisoner during pre-trial confinement was not so egregious as to give rise to any inference of intent to punish, nor were the conditions of his confinement that resulted from his classification so excessive as to amount to punishment).

[20] *United States v. Merritt*, 72 M.J. 483, 489 (C.A.A.F. 2013) (quoting *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006)); *see also Diaz*, 59 M.J. at 37–38.

law, we review de novo whether an appellant has been denied his due process right to a speedy appellate review.[21]

In *United States v. Moreno*, our superior court adopted the following four-factor balancing test from *Barker v. Wingo*[22] to determine whether the post-trial delay constitutes a due process violation: "(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice."[23] No single *Moreno* factor is required, but a facially unreasonable length of delay triggers the full due process analysis.[24] We recognize that none of the four factors has any "talismanic power. Rather, we must . . . weigh all the factors collectively before deciding whether [an accused's] right to a speedy [post-trial processing] has been violated."[25] "If we conclude that an appellant has been denied the due process right to speedy post-trial review and appeal, we grant relief unless this court is convinced beyond a reasonable doubt that the constitutional error is harmless."[26]

### 1. Length of Delay

The Government took 46 days to docket this case after the Convening Authority took action on the sentence. We presume delay is facially unreasonable whenever, *inter alia*, "the record of trial is not docketed by [this Court]

---

[21] *United States v. Arriaga*, 70 M.J. 51, 55 (C.A.A.F. 2011) (citing *Moreno*, 63 M.J. at 135).

[22] *Barker v. Wingo*, 407 U.S. 514, 530 (1972).

[23] *Moreno*, 63 M.J. at 142. This Court recently explained in *United States v. Rivera*, 81 M.J. 741, 745 (N-M Ct. Crim. App. 2021), that Military Justice Act of 2016 [MJA 16], Pub. L. No. 114-328, § 5324, 130 Stat. 2000, 2927 (codified at 10 U.S.C. § 860c (2018)), superseded the *Moreno I and II* timelines but left untouched the *Moreno III* timeline, and we also discussed new post-trial timelines as promulgated in Dep't of the Navy, Judge Advocate General / Cmdr. Navy Legal Service Cmd. Instr. 5814.1D, *Post-Trial Processing*, (Sep. 6, 2019)). Although Appellant pleaded guilty after the effective date of MJA 16, the pre-MJA 16 post-trial procedures are still applicable in this case because the charged misconduct and original referral occurred prior to the effective date of MJA 16.

[24] *Moreno*, 63 M.J. at 136.

[25] *United States v. Wilson*, 72 M.J. 347, 354–55 (C.A.A.F. 2013).

[26] *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006) (citation and internal quotation marks omitted).

within thirty days of the convening authority's action."[27] We conclude that this factor favors Appellant and triggers a full analysis of the *Barker* factors.

### 2. Reasons for the Delay

The Government may overcome the presumption of unreasonable delay by providing legitimate reasons for the delay.[28] Generally, "personnel and administrative issues . . . are not legitimate reasons for justifying otherwise unreasonable delay."[29] In this case, the primary reason for delay was reduced staffing at Code 40 resulting from the COVID-19 pandemic and the public health measures implemented to prevent the spread of COVID-19. Thus, the delay was not the result of bad faith, negligence, or institutional neglect. While we do not believe that COVID-19 makes any length of delay reasonable per se, we recognize that events outside the Government's control contributed to the delay. We conclude that this factor marginally favors the Government.

### 3. Demand for Speedy Trial

"[W]here the [appellant] has asserted his speedy trial right, it is 'entitled to strong evidentiary weight in determining whether the [appellant] is being deprived of the right.'"[30] Appellant did not assert his right to speedy appellate review until he submitted his brief to this Court. We conclude that Appellant's failure to assert his right to speedy review weighs against him, but only slightly, "given that the primary responsibility for speedy processing rests with the Government."[31]

### 4. Prejudice to Appellant

Having resolved the first three *Moreno* factors, we turn now to the fourth factor of prejudice, which we assess "in light of the interests of those convicted of crimes to an appeal of their convictions unencumbered by excessive delay."[32] We consider three sub-factors in this assessment: "(1) prevention of oppressive incarceration pending appeal; (2) minimization of anxiety and

---

[27] *Moreno*, 63 M.J. at 142.

[28] *Arriaga*, 70 M.J. at 57.

[29] *Arriaga*, 70 M.J. at 57.

[30] *Moreno*, 63 M.J. at 138 (quoting *Barker*, 407 U.S. at 531-32).

[31] *Moreno*, 63 M.J. at 138.

[32] *Arriaga*, 70 M.J. at 57 (quoting *Moreno*, 63 M.J. at 138) (additional citation and internal quotation marks omitted).

concern of those convicted awaiting the outcome of their appeals; and (3) limitation of the possibility that a convicted person's grounds for appeal, and his or her defenses in case of reversal and retrial, might be impaired."[33]

Appellant does not argue prejudice under the three factors listed above. Instead, he argues that this Court should grant relief in the absence of actual prejudice because relief is warranted under the circumstances.[34] He argues that the delay in docketing combined with his time spent in segregated confinement favor granting relief. We disagree. As explained above, the delay in docketing due to the COVID-19 pandemic was marginally reasonable due to those immediate circumstances, and Appellant's time in segregated confinement was not inappropriate. Thus, Appellant has failed to establish that he was prejudiced in any way by the delay in this case, and this factor weighs against Appellant.

Balancing these factors, we conclude that Appellant was not denied his due process right to speedy appellate review.

## III. CONCLUSION

After careful consideration of the record and briefs of appellate counsel, we have determined that the approved findings and sentence are correct in law and fact and that no error materially prejudicial to Appellant's substantial rights occurred.[35] The findings and sentence as approved by the convening authority are **AFFIRMED**.

FOR THE COURT:

RODGER A. DREW, JR.
Clerk of Court

---

[33] *Moreno*, 63 M.J. at 138–39 (quoting *Rheuark v. Shaw*, 628 F.2d 297, 303 n.8 (5th Cir. 1980)).

[34] *See United States v. Tardif*, 57 M.J. 219, 224 (C.A.A.F. 2002) (holding that military courts of criminal appeals have the authority under Article 66(c) to grant relief for excessive post-trial delay without a showing of actual prejudice when appropriate under the circumstances).

[35] Articles 59 & 66, UCMJ.